UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBBIE POWELSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SAUSALITO, et al.,<br><br>　　　　　Defendants. | Case No. 22-cv-01809-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Docket No. 22 |

　　　　Currently pending before the Court is Plaintiff Robbie Powelson's second motion for a temporary restraining order ("TRO"). Mr. Powelson asks for a TRO prohibiting the City (and others acting in concert with the City, including the City police) from harassing or threatening him when he is at the Marinship Park encampment. Mr. Powelson argues that the City is retaliating against him based on his having participated in litigation against the City and engaging in expressive activity critical of the City. Mr. Powelson asserts that, even though he is no longer a resident of the encampment, he still goes there so that (1) he can help residents of the camp who have filed suits, or who intend to file suits, against the City and (2) he can take videorecordings and photographs of conduct at the encampment, primarily by the City police and/or Urban Alchemy employees (who manage the camp). Mr. Powelson maintains that, in essence, he acts as a journalist; at the very least, he provides videorecordings and/or photographs to media outlets.

　　　　Having considered the parties' briefs and accompanying submissions, the Court finds this matter suitable for resolution without oral argument. The motion is hereby **DENIED**.

　　　　The standards for a TRO are the same as those for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must

1 demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that will
2 result if an injunction is not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an
3 injunction is in the public interest. *See Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20
4 (2008). The Ninth Circuit has clarified that its "sliding scale" approach to preliminary injunctive relief
5 is still viable. That is, if the plaintiff can demonstrate the risk of irreparable injury, under the sliding
6 scale test, the strength of the plaintiff's showing on the merits necessary to secure a preliminary
7 injunction varies with the degree to which the balance of hardship tips in its favor. In other words,
8 preliminary injunctive relief "'is appropriate when a plaintiff demonstrates . . . that serious questions
9 going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.'"
10 *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

11 The Court considers first whether Mr. Powelson would likely suffer irreparable injury without
12 a TRO. The Court concludes that Mr. Powelson has not made a sufficient showing on this TRO factor.
13 Although he claims that he simply wants to be free from police harassment or threats while at the
14 encampment, the underlying question is whether he is entitled to be at the encampment itself –
15 specifically, the tennis court area where the tents/platforms are located. The City has implemented a
16 Code of Conduct for the tennis court area, with one provision being that no guests are allowed in the
17 encampment. According to Mr. Powelson, he needs access to the tennis court area in order to help
18 campers who have lawsuits or who intend to file lawsuits against the City. However, Mr. Powelson
19 does not need to be physically present in the encampment in order to assist the residents there. He can
20 advise campers in the area immediately outside the tennis courts, and the City has essentially
21 confirmed that he will not be asked to leave that area.

22 Mr. Powelson protests that he still needs access to the camp itself in order to videorecord,
23 photograph, and/or otherwise document activities in the camp, in particular by the police and/or Urban
24 Alchemy. But Mr. Powelson has not shown that he cannot videorecord or photograph activities within
25 the camp if he is immediately outside the tennis court area. Furthermore, there are residents in the
26 camp who are able to videorecord or photograph what takes place inside the tennis court area. Even if
27 Mr. Powelson considers himself a journalist, that does not mean that he is necessarily entitled to access
28 the camp because it does not appear to be open to the general public. *Cf., e.g.*, *Nicholas v. Bratton*,

1  376 F. Supp. 3d 232, 259 (S.D.N.Y. 2019) (noting that "'[n]ews[people] have no constitutional right of
2  access to the scenes of crime or disaster when the general public is excluded'"; the First Amendment
3  only provides that "'the media's right of access [be] at least equal to that of the general public'").
4        Without a sufficient showing of likely irreparable injury, Mr. Powelson's motion for a TRO
5  must be denied.  However, even to the extent Mr. Powelson has made some showing of irreparable
6  injury here, the balance of hardships does not tip sharply in his favor.  As noted above, the City has a
7  no guest policy for the encampment, which was implemented when the City established a Code of
8  Conduct for the tennis court area in December 2021 (*i.e.*, when the camp was moved from the grassy
9  area to the tennis courts).  There is a facially reasonable basis for that policy – *i.e.*, COVID conditions,
10 which the Code of Conduct expressly referred to in stating the policy.  *See* RJN, Ex. B (Conduct of
11 Conduct ¶ 1) ("COVID protocols must be followed: . . . c. Social visits with non-residents will not be
12 permitted within the Temporary Camp.  All social visits between residents and non-residents must
13 occur outside the boundaries of the Temporary Camp.").  Furthermore, the City has provided
14 additional evidence as to why that policy is reasonable even aside from COVID concerns.  *See* Mather
15 Decl. ¶¶ 2-3 (noting that residents are not present at the camp 24 hours a day because they "leave
16 the tennis courts to work, use social services or attend to other personal business" and thus "their
17 personal belongings in or near their tents [are] left completely unattended").  To the extent Mr.
18 Powelson suggests the policy could continue to be in force but a singular exception could be made for
19 him alone, the Court notes that, while some residents support having Mr. Powelson present in the
20 camp, *see, e.g.*, Pl.'s Supp. Br., Ex. A ("Petition in Support of Having Guests and in Support of
21 Robbie"), not all residents seem to agree.  *See* Mather Decl. ¶ 9 (testifying that Mr. Powelson's
22 "activities are welcome by some residents" but others "have expressed to me their frustrations with
23 Mr. Powelson's conduct").
24       For largely the same reasons as above, the public interest weighs against Mr. Powelson's
25 request for a TRO.
26       Finally, although the above provides a sufficient basis to deny Mr. Powelson's motion, he
27 would fare no better even if the Court were to consider the likelihood of success on the merits.
28 (Because Mr. Powelson has not established a likelihood of irreparable injury, he must show a

United States District Court
Northern District of California

likelihood of success on the merits, and not just serious questions going to the merits.)  Mr. Powelson argues that the City removed him from the encampment on April 5, 2022, in retaliation for his having participated in litigation against the City or otherwise engaging in expressive activity against the City.  But the evidence of record does not lend much support to his claim of retaliation.  First, as noted above, there is the no-guest policy which was established well before Mr. Powelson filed the instant action.  Second, the City police were present at the camp that day to clear a tent that was no longer being used because the camper had found alternative housing.  *See* Mather Decl. ¶ 4.  The police did not know that Mr. Powelson and a different camper were using the tent until they arrived.  *See* Mather Decl. ¶¶ 5-6.  The police asked Mr. Powelson and the camper to vacate the tent simply so that they could carry out the task that they had been given.  *See* Mather Decl. ¶ 7.

Accordingly, Mr. Powelson's request for relief is denied.

This order disposes of Docket No. 22.

**IT IS SO ORDERED**.

Dated: April 15, 2022

_____
EDWARD M. CHEN
United States District Judge